UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| Miguel Sherwood, | ) | |
| | ) | |
| Plaintiff, | ) | NO: CV-04-3020-LRS |
| | ) | |
| v. | ) | AMENDED[1] |
| | ) | FINDINGS OF FACT AND |
| Jeld-Wen, Inc., a Washington Corporation, | ) | CONCLUSIONS OF LAW |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**Findings of Fact and Conclusions of Law**

This matter came on for trial from April 18, 2005, through April 21, 2005, before the above-entitled Court sitting without a jury, the Honorable Lonny R. Suko presiding.  Plaintiff Miguel Ochoa was represented by Bryan Smith and Blaine Tamaki of Tamaki Law Offices.  Defendant JELD-WEN was represented by Greg Hendershott of Dorsey Whitney.

The Court having heard testimony of witnesses, received documents into evidence and considered arguments of counsel, rendered its decision orally into the record on May 2, 2005, and the contents thereof are incorporated herewith in accord with FRCP 52.  The following findings of fact and conclusions of law are entered to confirm and supplement the Court's oral decision.

///

///

---

[1] Order amended to correct typographical error on page 7, paragraph no. 2.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 1

# FINDINGS OF FACT

1. The Court adopts the "Agreed Facts" from the Joint Pre-Trial Order entered on April 5, 2005 (Ct. Rec. 57).

2. Mr. Ochoa was not an employee of Jeld-Wen.

3. Mr. Ochoa was employed for Express Personnel, working on a temporary basis at JELD-WEN, Inc.'s, White Swan door skin plant, from September 25, 2002, to December 16, 2002.

4. JELD-WEN did provide or go over a Safety Orientation Checklist with Mr. Ochoa prior to the accident and Mr. Ochoa attended at least one safety meeting. Prior to the accident, Mr. Ochoa had been told by Jeld-Wen supervisors to be careful around moving equipment and to use common sense.

5. Mr. Ochoa's job title at JELD-WEN was "primeline wrapper" and he was responsible for assisting the primeline operator with various tasks associated with keeping the primeline running. He was also responsible for wrapping finished door skins in cellophane to prepare them for shipment.

6. JELD-WEN employee David Balles was the "primeline operator" who was Miguel Ochoa's immediate supervisor on the night shift.

7. On December 16, 2002, David Balles and Miguel Ochoa were coming back from a break at about 5:30 a.m. They were near the end of their 12 hour shift.

8. David Balles noticed on the control panel of the primeline that a light was on, indicating that the humidifier belt was off track.

9. Prior to this date, David Balles demonstrated to Miguel Ochoa how to fix this problem. Mr. Balles would climb the stairs on the north side of the

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 2

primeline, up to a catwalk adjacent to the running humidifier belt, to check a "whisker" or mechanical sensor. If the whisker was not tripped, Mr. Balles would kneel down, climb underneath the running humidifier belt, and onto a large oven. Mr. Balles would then walk across the oven to the south side of the humidifier belt, and check a photosensitive eye which was adjacent to the south side of the belt. Mr. Balles would then rub dust off of the eye, which usually caused the rollers on the primeline to release pressure on the belt, and put it back on track.

10. The procedure demonstrated by Mr. Balles to Mr. Ochoa violated company lockout policy, and was called a "short cut" by JELD-WEN management in their investigative documents.

11. JELD-WEN did not know or discover that another JELD-WEN employee taught this shortcut to David Balles prior to the accident.

12. On December 16, 2002, pursuant to the signal given by David Balles, Mr. Ochoa performed the shortcut demonstrated by Mr. Balles in the past. Prior to this date, Mr. Ochoa performed this task at the direction of Mr. Balles on several occasions.

13. When Mr. Ochoa attempted to wipe the eye on the date of this incident, he noticed that the belt was not tracked to the north.

14. The belt on December 16, 2002 was tracked to the south, somewhat hindering access to the photosensitive eye. Mr. Ochoa therefore either had to reach around the moving belt or upwards near the belt's frayed edges, to clean off the eye. When he cleaned the eye on this occasion, the belt did not go back on track.

15. Mr. Ochoa then grabbed the edge of the belt to put it back on track. On his second attempt to move the belt, his left hand and arm were pulled in

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 3

between the steel rollers and the moving belt. In the process, Mr. Ochoa's right hand and arm were pulled in between the belt and rollers, up to his armpit.

16. Mr. Balles turned off the primeline machine when he thought he heard someone screaming and Mr. Ochoa was promptly assisted and extracted from the machine by Jeld-Wen employees, at which time an ambulance was called.

17. Mr. Ochoa was transported to Memorial Hospital, where he spent more than a week in the hospital recovering from fractures and friction burns to his arms and shoulder.

18. JELD-WEN'S investigation of the accident revealed that David Balles instructed Miguel Ochoa to perform an unsafe task, in violation of JELD-WEN lockout policies.

19. Miguel Ochoa's injuries diagnosed at Memorial Hospital include an open fracture, left humerus; partial radial nerve palsy, left hand; nondisplaced fracture, right ulna; and friction burns to the left shoulder and right forearm.

20. Throughout his recovery, Mr. Ochoa had some trouble sleeping due to nightmares about the incident which caused him to awaken in a cold sweat. The nightmares continued for almost a year following the incident.

21. Mr. Ochoa received physical therapy at Yakima Hand Clinic until March 25, 2003.

22. Mr. Ochoa underwent an independent medical examination with Dr. Brian Tallerico on February 7, 2004, wherein his range of motion was tested, his treatment reviewed, and a plan for the future was developed.

Dr. Tallerico's diagnosed Mr. Ochoa with the following:

a. Status Post II open fracture of the left humerus with radial nerve palsy, related to the industrial injury of December 16, 2002, on a more probable than not basis, with near complete recovery of radial nerve function.

b. Status post right ulnar shaft fracture, related to the industrial injury of December 16, 2002, on a more probable than not basis.

c. Multiple full-thickness burns on the right and left upper extremities and left shoulder, treated with skin grafting, related to the industrial injury of December 16, 2002, on a more probable than not basis.

d. Mild decrease in active range of motion of the left shoulder, secondary to the industrial injury of December 16, 2002, on a more probable than not basis.

e. Status post surgical treatment of a right distal radial shaft fracture, unrelated to the industrial injury of December 16, 2002, on a more probable than not basis.

23. Dr. Tallerico noted that all of the above diagnoses have reached maximum medical improvement with permanent partial impairment and disfigurement of 5 percent permanent partial impairment of the right upper extremity due to disfigurement, and 15 percent permanent partial impairment of the left upper extremity due to sensory radial nerve deficit, medial brachial nerve deficit, medial brachial cutaneous nerve deficit, sensory deficit of the radial nerve, and open fracture.

24. On November 3, 2004, Mr. Ochoa's plastic surgeon, K.F. Aboulhosn, M.D., assessed Mr. Ochoa with a Category 4 Skin Impairment, under the

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 5

skin impairment rating, and stated that Mr. Ochoa's skin graft would always be at a disadvantage relative to his normal skin. He stated that his skin would also be sensitive to certain chemicals, as well as to other irritants, including radiation energy from the sun. He stated that Mr. Ochoa's condition is stable medically, but he has limitation in many daily activities, including avoidance and protective measures against certain chemical or physical agents. He stated that Mr. Ochoa would need to take protective measures against certain chemical or physical agents and may require some limitation of his activities in his future employment.

25. Mr. Ochoa was evaluated by Donald Williams, M.D., a psychiatrist, who found that Mr. Ochoa satisfied full criteria for Post Traumatic Stress Disorder through the first 9 months of 2003, and that his symptoms have now essentially ceased, allowing him to function in full time employment.

26. Dr. Williams recommended weekly individual psychotherapy, which the plaintiff did not attend.

27. According to the Washington State Insurance Commissioner's Life Expectancy Table, Mr. Ochoa will live another 53.66 years with the aforementioned impairments and/or disabilities.

28. Plaintiff incurred $48,161.41 in medical expenses as a result of the subject accident. These expenses were reasonable in amount, necessary for the plaintiff's diagnosis and treatment and related to the subject accident.

29. Plaintiff incurred $6,746.36 in wage loss as a result of the subject accident.

**CONCLUSIONS OF LAW**

1. Jurisdiction is vested in this court based on diversity, 28 U.S.C. §1332, and Washington State tort law.

2. Miguel Ochoa was an employee of Express Personnel, not JELD-WEN.

3. Plaintiff's claims are not barred under the doctrine of assumption of the risk.

4. JELD-WEN is not entitled to the defense of immunity under the Industrial Insurance Act.

5. JELD-WEN is vicariously liable for the acts and omissions of David Balles which fell below the standard of care in this case, and which was a proximate cause of Mr. Ochoa's accident, which proximately caused injuries and damages to the plaintiff.

6. JELD-WEN is directly liable for failing to observe or discover that employees, including a supervising employee, were using a "short cut" in violation of company lockout policy, which proximately caused injuries and damages to the plaintiff.

7. As a proximate result of JELD-WEN's and David Balles's negligence, Plaintiff incurred medical expenses of $48,161.41. These expenses were reasonable in amount, necessary for his treatment and diagnosis, and related solely to the accident of December 16, 2002.

8. As a proximate result of JELD-WEN's and David Balles's negligence, Plaintiff incurred wage loss in the amount of $6,746.36.

9. As a proximate result of JELD-WEN'S and David Balles's negligence, Plaintiff incurred non-economic damages for past and future pain, suffering, emotional distress, permanent impairment and disfigurement in the amount of $250,000.

10. Mr. Ochoa's actions were reasonable under the totality of the

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 7

circumstances, given David Balles's demonstration of the short cut and act of sending Mr. Ochoa to perform an unsafe task.

11. Mr. Ochoa did not exercise reasonable care under the circumstances, when he grabbed the belt and was pulled into the rollers, proximately causing him injuries and damages.

12. Mr. Ochoa was comparatively at fault for his own injuries in an amount of 50%, and his damages will accordingly be reduced by 50%, or $152,453.89.

## RELIEF

Judgment shall be entered against the defendant JELD-WEN based on its direct negligence as well as its vicarious liability for David Balles's negligence in this case which proximately caused injuries and damages to the plaintiff, but reduced by plaintiff's contributory negligence, which also proximately caused the above-referenced injuries and damages to the plaintiff.

DATED this 9th day of May, 2005.

s/Lonny R. Suko
_____
LONNY R. SUKO
United States District Judge

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 8